UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61873-CIV-DIMITROULEAS/ROSENBAUM

WALLY E. DROSSIN,
on behalf of herself and
all others similarly situated,

    Plaintiffs,

vs.

NATIONAL ACTION FINANCIAL
SERVICES, INC.,

    Defendant.
_____/

**ORDER**

This matter is before the Court on Plaintiff's Motion to Compel [D.E. 37, 40]. On December 11, 2008, the Court held a hearing on Plaintiff's Motion, and both parties appeared and presented argument. [D.E. 46]. After review of the Motion, all supporting and opposing filings and briefs, Paul Labaki's affidavit [D.E. 58], and the Court file, and in light of the parties' arguments at the December 11th hearing, the Court grants in part and denies in part Plaintiff's Motion to Compel.

*I. Background*

Plaintiff Wally E. Drossin filed this action on December 21, 2007, on behalf of herself and all others similarly situated, alleging Defendant National Action Financial Services, Inc., violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and the Florida Consumer Collections Practices Act, Fla. Stat. §§ 559.55, *et seq.*, through its communications by failing to identify itself and failing to inform the consumer that "this is an attempt to collect a debt." D.E. 1.

During the course of discovery, Plaintiff served interrogatories and requests for production

on Defendant. Upon review of Defendant's responses, Plaintiff filed her Motion to Compel on November 28, 2008 [D.E. 37, 40], seeking to overrule Defendant's objections to Plaintiff's interrogatories and document requests, and seeking better responses and further documents from Defendant. On December 5, 2008, Defendant filed its Response to Plaintiff's Motion to Compel, opposing Plaintiff's Motion [D.E. 43] and stating that it had fully responded to all interrogatories and documents requests, as appropriate. Plaintiff then filed the transcript from the December 2, 2008, deposition of Paul A Labaki, designated corporate representative for Defendant, on December 11, 2008. [D.E. 45].

Also on that date, the Court held a hearing on Plaintiff's Motion to Compel. Both parties appeared and made argument. During the hearing, the Court directed Defendant to submit a factual statement regarding certain interrogatory and document responses by 5:00 p.m., on December 17, 2008, as detailed below, and informed the parties that it would make a ruling on the Motion after Defendant filed its statement. *Id.*

On December 17, 2008, Defendant filed the Notice as directed by the Court during the December 11th hearing. The Notice contained a signed affidavit from Mr. Labaki, as well as records, as discussed further below. [D.E 58].

## *II. Analysis*

Rule 26(b), Fed. R. Civ. P., sets forth the permissible parameters of discovery. Under that rule,

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or   sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . ."

2

R. 26(b), Fed. R. Civ. P. The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added). Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted); *see also Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies. The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).

Of course, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose undue burden or be protected by privilege, under the tests described in Rule 26(b)(2)C. In light of these standards, the Court reviews the parties' arguments regarding each discovery response at issue and sets forth the Court's rulings.[2]

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

[2] During the hearing on December 11, 2008, Plaintiff withdrew her objections to Defendant's responses to Interrogatories 1, 4 and 10. Thus, the Court does not address those

**Interrogatories 2 and 3**

Plaintiff's Interrogatory 2 requests "the number, names and address[es] of Florida persons to whom Defendant left the messages from December 21, 2006 through present." D.E. 37, Ex. A, 37-2, at 3-5. Interrogatory 3 requests the same information but for the period from December 21, 2005, through the present. *Id.*

In her Motion to Compel, Plaintiff limits the scope of these interrogatories to seek information regarding only those messages left on October 15 and 16, 2007. *Id.*, ¶ 3. She further refines the requests, asking that Defendant produce information regarding only those individuals for whom messages were left on October 15 and 16, 2007, by a specific calling team of Defendant's directed by a Mr. Althoff, arguing that such information is relevant to the numerosity requirement of Rule 23, Fed. R. Civ. P.

In its brief and during the hearing, Defendant explained that Defendant divides its employees into 50 to 100 "teams" composed of 4 to 18 members. Members of each team then are assigned accounts to be called. When making the calls, Defendant's employees may use one of several different messages. While Defendant stated that it requires message approval before any team is permitted to leave a particular message for an alleged debtor, Defendant admitted during the course of discovery that messages allegedly left for Plaintiff on October 15 and 16, 2007, were never authorized by Defendant pursuant to its policy. Nevertheless, Defendant was able to identify the message in question as having been used by Mr. Althoff's team. In so doing, however, Defendant cautioned that it could not now discern which specific messages were left by Mr. Althoff's team members on October 15 and 16, 2007, nor could it be certain that voicemail messages had been left

---

objections.

4

at all at the telephone numbers called, as people, as opposed to machines, sometimes receive the calls and hang up on them.

Where, as here, a plaintiff seeks information relating to class certification, additional considerations of relevancy may be required. While discovery regarding information necessary to address class certification requirements under Rule 23, Fed. R. Civ. P., falls within the realm of permissible discovery, *see In re Tri-State Crematory Litigation*, 215 F.R.D. 660, 688 (N.D. Ga. 2003) (citing *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570-71 (11th Cir. 1992)), the Supreme Court has rejected pre-class certification discovery of identifying information of potential class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action, as opposed to for reasons of discovering information "relevant to the subject matter involved in the pending action." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978).

With this guidance in mind, the Court examines the type of information sought by Interrogatories 2 and 3, as well as Plaintiff's stated purposes in seeking such information. As discussed above, Plaintiff states that she seeks the requested information for the purpose of establishing numerosity with respect to her motion for class certification. As Plaintiff bears the burden of demonstrating numerosity (as well as the other Rule 23 requirements for class certification), *see In re Tri-State Crematory Litigation*, 215 F.R.D. at 688, discovery designed to address this requirement may well be appropriate. Thus, to the extent that the requested discovery may provide an indication of how many individuals received the allegedly offending messages, it is relevant and permissible.

Here, however, Defendant indicates that it cannot identify which calls were placed by Mr.

Althoff's team, and, even if it could, that information would not indicate the telephone numbers where voicemail messages had actually been left, and it would shed no light on which particular message may have been left where a message was recorded. Thus, Defendant argues that the information sought is not relevant.

In reviewing documents provided by Defendant to Plaintiff in the course of responding to other discovery requests, however, Plaintiff notes that certain records from Defendant's database, do, in fact, appear to include information regarding the calling team. Page 28 of D.E. 40, for example, contains notes after the telephone numbers indicated. These notes read, "ALL CALLS ED LOVALLOS GROUP EXT 2877." In light of this information disclosing the calling team, at the hearing, the Court asked counsel for Defendant whether Defendant's database could be searched by calling teams. As counsel for Defendant did not have that information available during the hearing, the Court directed Defendant to submit an affidavit indicating whether such a search could be conducted.

On December 17, 2008, Paul Labaki, Esq., an assistant general counsel for Defendant, filed an affidavit responding to the Court's inquiry. In it, Mr. Labaki stated that Defendant's "account notes and computer records do not contain a field or information identifying which Team or Teams have attempted to collect on an individual account or group of accounts." D.E. 58 at 3. Therefore, he concluded, "account notes/computer records cannot be searched, identified or organized by the Team or Teams who have sought to collect those accounts." While the Court appreciates and understands this information, it is not clear to the Court whether the information contained in the records can be searched for the term "Althoff," as opposed to searching the records by team field. If the records may be searched for the term "Althoff," the Court finds any responsive information

6

to be relevant and discoverable. Although such information may not reveal, as Defendant contends, the particular message left or whether a message was left at all, the request for such information, nonetheless, falls within the broad scope of discovery authorized by the Federal Rules of Civil Procedure, as it is reasonably calculated to lead to admissible evidence regarding Plaintiff's class certification claims of numerosity. With this information, Plaintiff may conduct further investigation to determine whether the allegedly offending message was left for anyone else.

Although identification of class members for the sake only of notifying them of the class action is not permissible at the pre-class certification stage under *Oppenheimer*, here Defendant can provide no information regarding the size of the alleged class, and based on the information provided by Defendant, the Court can discern no way to ascertain numerosity of the alleged class other than to start with a list of potential class members and investigate whether the individuals appearing on it, in fact, received the allegedly offending message. Consequently, the identities of the individuals receiving calls from the Althoff Team on October 15 and 16, 2007, are relevant to numerosity and are not being sought for the purpose of class notification.

Defendant complains that its production of the requested information will violate the FDCPA. In this case, however, Plaintiff seeks the information for purposes of enforcing compliance with the FDCPA. Moreover, the Court can fashion safeguards to protect the privacy of the individuals whose information may be provided. Should Defendant be able to search its account record database for the term "Althoff," all responsive information shall be used only for purposes of this litigation, shall not be disclosed to anyone other than the litigants, their counsel, and their agents as necessary to conduct this litigation, and shall be filed under seal if a party finds it necessary to file such information with the Court, unless a further order of the Court relieves the parties of

these procedures. If Defendant's account records database is not capable of being searched for the term "Althoff," Defendant shall provide an affidavit so stating.

**Request for Production 7**

Plaintiff's Document Request 7 asks for "[a]ll communications to or from Plaintiff or her attorneys or agents or anyone acting on Plaintiff's behalf." D.E. 40, at 6. In this regard, Plaintiff complains that Defendant provided her with redacted records of a "J. Drossin," which contain notations of telephone calls actually made to Plaintiff. Plaintiff desires the unredacted version of these records. In explaining why she believes the unredacted version to be relevant, Plaintiff complains that the redacted copy of the J. Drossin file is insufficient because it allows Plaintiff to see only those two calls that Defendant has identified as being mistakenly made to Plaintiff but were intended for J. Drossin. Plaintiff is unable to determine whether Defendant mistakenly made any other calls to Plaintiff while attempting to reach J. Drossin, besides the October 15th and 16th calls for which Plaintiff received messages. Further, Plaintiff wants to compare her own file to the J. Drossin file to see if it indicates the same team, dates of calls, etc. In seeking this information, Plaintiff agrees that she does not need the personal information of "J. Drossin.[3]

During the hearing, Defendant began by explaining the how Plaintiff's information came to be found in files pertaining to J. Drossin. In this regard, he explained that in searching for communications by Defendant with Plaintiff, Defendant could find no indication in records

---

[3] Plaintiff also argues that during Mr. Labaki's deposition, he stated Defendant had identified Plaintiff's phone number via a "skip trace" which should be in the "J. Drossin" file. According to Plaintiff, as the "skip trace" led to the mistaken calling of Plaintiff, Plaintiff should be able to obtain information regarding the trace. The Court found during the hearing that information regarding the "skip trace" was beyond the scope of this document request and therefore denied the request in that regard.

8

pertaining to Plaintiff that it had called Plaintiff on October 15 and 16, 2007. Indeed, Defendant had not even received Plaintiff's account at that point. Consequently, Defendant thought to check other files relating to individuals with the last name "Drossin" to see whether they contained notations of telephone calls made to Plaintiff on October 15 and 16, 2007. In conducting this review, Defendant discovered that the account records of J. Drossin actually contained entries indicating that Plaintiff's number had been called, apparently by mistake, in attempting to collect a debt from J. Drossin. Because J. Drossin's account records also contain information allegedly completely irrelevant to Plaintiff or this case, Defendant redacted portions of J. Drossin's records before producing them for Plaintiff.

The Court then asked what types of information Defendant had redacted. Because Defendant was not certain of the answer to this question at the time, the Court directed Defendant to submit an affidavit indicating the categories of information it had redacted from J. Drossin's account records provided to Plaintiff. As instructed, Mr. Labaki filed an affidavit indicating that Defendant had produced to Plaintiff another version of the redacted documents, redacting only J. Drossin's account number, full name, Social Security number, and address, as well as the complete name of Defendant's client.

Based on the new version of the redacted J. Drossin records, it appears as though Defendant has provided Plaintiff with all of the information she has requested. Consequently, Plaintiff's Motion to Compel appears moot with respect to this request. To the extent that it is not, however, the Court denies Plaintiff's Motion to Compel with regard to Request 7, as Plaintiff has set forth no explanation of the relevance of J. Drossin's personal information, which is the only information from the J. Drossin records that has not been provided at this point.

**Production Request 8**

Document Request 8 seeks "[a]ll manuals, instructions, guidelines, and other documents setting forth policies and procedures to be used by employees of [Defendant] with respect to collecting debts."  D.E. 40, at 7.  Plaintiff complains that while Defendant contends that it fully responded to this document request, during the deposition of Mr. Labaki, Mr. Labaki indicated that he had additional policies that had not been turned over.  *See* D.E. 45, at 23-31, Deposition Transcript of Corporate Representative Paul Labaki, Dec. 2, 2008.  Plaintiff, therefore, requests that Defendant be directed to respond fully to this document request.

Defendant does not contest the relevance of this request but disagrees that Mr. Labaki stated that he had not provided all documents responsive to this document request.  Instead, Defendant asserts that Mr. Labaki merely indicated that he was unsure all responsive documents had been provided.

During the hearing, the Court directed Defendant to confer with Mr. Labaki and ordered that Mr. Labaki review all his records to determine whether all documents had been produced in response to Document Request 8.  In Mr. Labaki's subsequently filed affidavit, Mr. Labaki stated,

> 21. Attached to Exhibit 2 [of the Affidavit] are three-emails and one memorandum prepared by myself and distributed to [Defendant's] employees regarding its procedures for leaving voice messages.
>
> 22. Exhibit 2 represents all written documentation of [Defendant's] procedure for leaving voice messages.
>
> 23. These procedure require that [Defendant] identify itself as a debt collection and that the purpose of the communication is to collect a debt.

      24.      These procedure represent [Defendant's] attempt to comply with *Foti v. Nco Financial Systems, Inc.*, 424 F. Supp.2d 643 (S.D.N.Y. 2006).

D.E. 58, pp.5-6.

While Mr. Labaki's affidavit indicates that Defendant has produced all written documentation of Defendant's procedure for leaving voice messages, it does not specifically indicate whether Defendant has produced all written documentation of all policies and procedures to be used by employees of Defendant with respect to collecting debts. Therefore, Defendant is directed to turn over any written documentation of its policies and procedures to be used by employees of Defendant with respect to collecting debts, to the extent that it has not already done so. If Defendant has already made complete disclosure in this regard, it must provide an affidavit so stating.

### III. Conclusion

Accordingly, it is hereby **ORDERED and ADJUDGED** that Plaintiff's Motion to Compel is [D.E. 37, 40] **GRANTED in part** and **DENIED in part**, consistent with the terms of this Order. Defendant shall provide all additional information, documents, and affidavits required by this Order by 5:00 p.m. on Tuesday, December 23, 2008.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 19th day of December, 2008.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William P. Dimitrouleas
       counsel of record