UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61873-CIV-DIMITROULEAS

WALLY E. DROSSIN,
on behalf of herself and
all others similarly situated,

      Plaintiff,

vs.

NATIONAL ACTION
FINANCIAL SERVICES, INC.,

      Defendant.

_____/

## ORDER GRANTING MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification [DE-19], filed herein on November 4, 2008. The Court has carefully considered the Motion, the Memorandum in Support [DE-20], the Appendix [DE-20-2], the Declarations in Support [DE-21; DE-22; DE-23], Defendant's Response [DE-36], Plaintiff's Reply [DE-44], Defendant's Supplemental Response [DE-70], Plaintiff's Supplemental Reply [DE-75], and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Wally E. Drossin filed this action on December 21, 2007, on behalf of herself and all others similarly situated. She alleges that Defendant National Action Financial Services, Inc. ("NAFS"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and the Florida Consumer Collections Practices Act, Fla. Stat. §§ 559.55, *et seq.* ("FCCPA"), through its communications. Specifically, Plaintiff alleges, in the Amended Complaint, that in telephone messages she received on October 15 and 16, 2007, the Defendant

failed to identify itself and failed to indicate the purpose of the messages.  The messages stated as follows:

> I am calling with the offices of National Action Financial Services.  This message is being left in accordance with both Federal and State regulations.  Unfortunately, due to the sensitive nature of this call, Federal laws prohibit the disclosure of any additional information at this time. If you intend to protect your rights as a consumer you will contact me immediately at 1-800-443-2918.  That is 1-800-443-2918.[1]

## II.  DISCUSSION

The FDCPA requires that debt callers give "meaningful disclosure of the caller's identity" when placing telephone calls, except when communicating with third parties. 15 U.S.C. §1692d(6).   The FDCPA also requires that in an initial oral communication, a debt collector must indicate that it is "attempting to collect a debt and that any information obtained will be used for that purpose," and that in subsequent communications, the debt collector must identify itself as a debt collector.  15 U.S.C. §1692e(11).  The Florida Consumer Collections Practices Act, Section 559.72(9) prohibits persons, in collecting consumer debts, from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).

### A.  Standing

"[P]rior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one

---

[1]The transcript of the messages also indicated that the caller's name was "Mr. Marcio." The remainder of those messages was the same as quoted above.

named class representative has Article III standing . . ..." Prado-Steiman v. Bush, 221 F.3d 1266,

1279 (11th Cir. 2000); see also, Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987)

(concluding that where no exception applies, class action is moot if no named plaintiff's claim is

alive on date of certification); Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987).  In the

instant case, Plaintiff Wally E. Drossin is the only named Plaintiff and Defendant contends that

she lacks standing.  Thus, the Court will address this issue before moving on to the class

certification arguments.

Defendant argues that the Plaintiff was not the intended recipient of the October 2007

calls and thus is not a consumer and lacks standing.  According to Defendant, Plaintiff had also

received calls in November and December of 2007, in which it *did* identify itself as a debt

collection agency.  It argues that those later messages were intended for Plaintiff, but that the

earlier calls at issue here were meant for a different person with the last name "Drossin."  It

contends that in October of 2007, it had an account that belonged to an individual named "J.

Drossin."  Upon running a skip-trace search to locate potential phone numbers for that person,

Plaintiff's number came up.  However, it allegedly was the result of an error that, rather than a

live caller phoning Plaintiff to determine if it was the correct number for J. Drossin, the auto-

dialer called Plaintiff and left the messages at issue here.  Defendant argues that since Section

1692e(11) of the FDCPA only applies to a consumer, Plaintiff does not have standing to bring

this action.

In support, Defendant points to cases in which parties that were not the intended

recipients of the messages attempted to bring claims.  For example, in Conboy v. AT & T Corp.,

241 F.3d 242 (2d Cir. 2001), the plaintiffs lacked standing to sue under Section 1692e(11) as

their daughter-in-law was the consumer and they admitted that "they were in no way obligated to pay the debt . . .." Conboy, 241 F.3d at 257.  Similarly, in Sibersky v. Goldstein, 155 Fed. Appx. 10 (2d Cir. 2005), the husband lacked standing as his wife was the only one who owed the debt and thus the only consumer.  Sibersky, 155 Fed. Appx. at 11-12.  Therefore, Defendant argues, since Plaintiff did not actually owe the debt that the October calls were in relation to and the messages were not intended for her, she does not constitute a consumer within the FDCPA's definition.

First, the Court would note that the civil liability portion of the FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person . . .." 15 U.S.C. § 1692k(a) (emphasis added).

> The liability section [of the FDCPA] is couched in the broadest possible language; the statute is not limited to 'consumers.' Moreover, a number of violations proscribed by the Act harm persons other than consumers. [If non-consumers lacked standing, this would lead] to the absurd conclusion that Congress created a piece of consumer protection legislation with a 'private attorneys general' enforcement mechanism, and then failed to provide persons harmed by unfair debt collection practices with a cause of action.

Whatley v. Universal Collection Bureau Inc., 525 F. Supp. 1204, 1205-1206 (N.D. Ga. 1981). The Court does recognize, though, as Defendant points out, that Section 1692e(11) does use the term 'consumer' specifically.  As noted above, Section 1692e(11) provides that it is a violation "if the initial communication with the *consumer* is oral . . . [to fail to disclose] that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector . . .." 15 U.S.C. § 1692e(11) (emphasis added).

4

However, the Court would note that the Act defines a consumer as one who owes or *allegedly* owes a debt. 15 U.S.C. § 1692a(3). Furthermore, because the FDCPA is designed to protect consumers, it is liberally construed to effect its purpose. Ramirez v. Apex Fin. Mgmt., LLC, 567 F. Supp. 2d 1035, 1040 (N.D. Ill. 2008) (citing Ross v. Commercial Fin. Serv., Inc., 31 F. Supp. 2d 1077, 1079 (N.D. Ill. 1999) (internal citations omitted)). Moreover, as Plaintiff points out, the FDCPA is analyzed from the "least sophisticated consumer's" perspective. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985). The text of the message left for Plaintiff does not indicate to whom the message was intended. Thus, there was no way for Plaintiff to know that it was not intended for her, but rather J. Drossin. Therefore, from the "least sophisticated consumer" perspective, it is reasonable that Plaintiff thought she was the person who allegedly owed the debt and thus was the consumer. This is so especially as Plaintiff then received a letter from Defendant a few weeks after the message. In that letter, Defendant sought to collect a debt which it states was the accurate debt assigned to Plaintiff.

There was no way for Plaintiff to be aware of Defendant's error and mixup. What is apparent was that she received an initial communication in the form of a message, which did not convey the name of the debtor, but indicated that Plaintiff was a consumer who needed to protect her rights. Then, a short time later, she received a letter from the same entity indicating that she owed a debt. The message, therefore, conveyed that Plaintiff allegedly owed the debt–and thus that she was a consumer. The Court would further note that the FDCPA was crafted as a "response to 'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 89 (2d Cir. 2008) (citing S. Rep. No. 95-382, at 4 (1977), as reprinted in, 1977

5

U.S.C.C.A.N. 1695, 1699).   Accordingly, the Court finds that Plaintiff does have standing and the class certification arguments can be addressed.

## B.  The Fair Debt Collection Practices Class

### 1.  Appropriate Class Definition

As an initial matter, the Court must address the proposed class definition.  See e.g., O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 477 (S.D. Fla. 2006); Perez v. Metabolife Int'l., Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003); Rink v. Cheminova, Inc., 203 F.R.D. 648, 660 (M.D. Fla. 2001).  The FDCPA class is defined by Plaintiff as:

> (i) all Florida residents for whom Defendant left a telephone message
>
> (ii) in which Defendant failed to state that the call was from a debt collector and/or that the purpose of the call was to collect a debt
>
> (iii) incurred for personal, family, or household purposes
>
> (iv) during the one-year period prior to the filing of the Complaint (December 21, 2007) through the date of class certification.

Defendant argues that the class definition is overly broad and inadequate.  First, Defendant argues that a class defined as those to whom Defendant did not identify itself as a debt collector is excessively broad, as identification by the name of Defendant alone could be sufficient to convey that it was a debt collector.  Defendant cites to Reed v. Global Acceptance Credit Co., 2008 WL 3330165 (N.D. Cal. Aug. 12, 2008), to show that it could be possible to identify a company as a debt collector based on the defendant's name.  Based on this, the Court would be required to make individual inquiries of each member of the class.  However, in Reed, the court was addressing a motion for summary judgment, which the court denied, finding that there was a material issue of fact as to whether the defendants had adequately disclosed that it

was a debt collector.  Reed, 2008 WL 3330165 at *3.  The court found that the name "Global Acceptance Credit Company" could suggest that the caller was a debt collector.  Id. at *4.  The court noted however, that in another case, a name such as "NCO Financial Systems" did not convey that the caller was a debt collector.  Id. (citing Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643, 669 (S.D.N.Y. 2006)).

First, this issue is before the Court upon a Motion for Class Certification, not a Motion for Summary Judgment, thus the Court will not decide the issue at this time as it does not defeat the class definition and would not require an individualized inquiry–if it is a material issue of fact as to whether the name suggests a debt collector, it would be common to all class members. However, without deciding the issue, the Court would note that the statute is construed from the perspective of the "least sophisticated consumer" and the name "National Action Financial Services" does not automatically convey that it is a debt collector.  Furthermore, Defendant argues that the issue could result in individual inquiries to determine whether each class member might have known that the name suggested a debt collection agency based on previous communications.  However, even in subsequent communications, the Act requires that the debt collector must disclose itself as such.  15 U.S.C. § 1692e(11).  Thus, the Court does not find that this definition would result in individualized inquiries.

Defendant also claims that the definition is inadequate as the Act does not require it to state the purpose of the call in Section 1692d as Plaintiff claims.  While the Court notes that in the Amended Complaint, Plaintiff cites to Section 1692d for the proposition that a debt collector must state the purpose of the call and to Section 1692e for the proposition that a debt collector must identify itself, the reverse would be more appropriate.  As noted above, Section 1692d

7

requires that identity disclosure is made.  15 U.S.C. §1692d(6).  Section 1692e meanwhile,

requires that the caller indicate he is attempting to collect a debt–in other words, that the purpose

of the call is disclosed.  15 U.S.C. §1692e(11).  This error does not affect the proposed class

definition.  Thus, those provisions still apply and the class definition is adequate and the inquiry

will move on to the class certification requirements.

### 2.  Rule 23(a)

Parties seeking class action certification must satisfy the four requirements of Federal

Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and

adequacy of representation.  <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997).  Parties

moving for class certification bear the burden of establishing each element of Rule 23(a).

<u>London v. Wal-Mart Stores</u>, 340 F.3d 1246, 1253 (11th Cir. 2003).  If the party seeking class

certification fails to demonstrate any single requirement, then the case may not continue as a

class action.  <u>Jones v. Roy</u>, 202 F.R.D. 658, 662 (M.D. Ala. 2001).  Specifically, the four

requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In deciding whether to certify a class, a district court has broad discretion.  <u>Washington v.

Brown & Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1569 (11th Cir. 1992).  Although a district

court is not to determine the merits of a case at the certification stage, sometimes "it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification

question." Id. at 1570 n.11 (quoting General Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 160

(1982)).  A class action may only be certified if the court is satisfied, after a rigorous analysis,

that the prerequisites of Rule 23 have been met.  Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th

Cir. 1984).  For the reasons discussed below, the Court is satisfied that the requirements for a

class action have been met.

### a.  Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The focus of the numerosity inquiry is

not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether

joinder of proposed class members is impractical."  Armstead v. Pingree, 629 F. Supp. 273, 279

(M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of

class members," but they "must make reasonable estimates with support as to the size of the

proposed class."  Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000).  The

Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty

adequate."  Cheny v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v.

Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).  Thus, the "sheer number of

potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."  LaBauve v.

Olin Corp., 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing Bacon v. Honda of Am. Mfg., Inc., 370

F.3d 565, 570 (6th Cir. 2004)).

In support of numerosity, Plaintiff points out that in its Supplemental Response to

Interrogatories, #3, Defendant indicated that "the number of individuals in Florida who possibly

received the Message between December 21, 2005 to August 24, 2007 is 30,139." (D's Supp.

Resp, Pl.'s Appendix [DE-20-2] at p. 4). Defendant counters that this is a misstatement of its

response, as this simply refers to the number of accounts that its teams left voice messages for

during that time period. Defendant contends that numerosity cannot be met as the number of

accounts that possibly could have received a similar message cannot be ascertained. According

to Defendant, it is unable to identify any accounts, other than Plaintiff, that also received that

message. However, Defendant's inadequate record keeping is not grounds to defeat the class

certification or it would be fairly easy for defendant debt collectors to defeat such motions.

Macarz v. Transworld Sys., Inc., 193 F.R.D. 46, 57 (D. Conn. 2000) (Congressional purpose in

enacting the FDCPA would be "thwarted" if a large and sophisticated debt collection company

could "avoid class action liability by mere fact of inadequate record-keeping."); Borcherding-

Dittloff v. Transworld Sys., 185 F.R.D. 558, 563 (W.D. Wis. 1999) (lack of information on part

of debt collector does not preclude certification); Wilborn v. Dun & Bradstreet Corp., 180 F.R.D.

347, 357 (N.D. Ill. 1998) (same).

   Moreover, in the deposition of Defendant's corporate representative, Paul Labaki, he

testified that the Defendant uses a dialer campaign to call accounts. (DE-45-2, p. 87, lines 3-5).

The dialer campaign uses a particular message. (DE-45-2, p. 88, lines 5-7). Though there was

no way for Labaki to state exactly how many other accounts were in the same campaign as

Plaintiff, the minimum of accounts is typically 50–meaning at least 49 other people could have

been called during the same calling campaign in which Plaintiff was contacted–and the

maximum is "tens of thousands." (DE-45-2, p. 88, lines 8-25; p. 89, lines 1-7). Mr. Labaki did

point out, however, that within that number there would have been people who answered and

hung up or numbers for which there was no answer. (DE-45-2, p. 89, lines 6-7). However, based

on this information, Plaintiff has made a reasonable estimate to satisfy the numerosity

requirement. See Evans v. U.S. Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983) (courts may

"make common sense assumptions in order to find support for numerosity.").

In addition, on December 31, 2008, Defendant filed a Supplemental Filing in Response to

a Court Order on Plaintiff's Motion to Compel. [DE-71]. Defendant indicated that it had

conducted a search of its records to determine what, if any, accounts contained a line entry

identical to the line entry for Plaintiff's account on the dates of October 15 and 16, 2007–and

thus potentially identify accounts that might have received the same messages. It identified 84

accounts with the same line entries–though Defendant argues that there is still a possibility that

these accounts received a different message or never received a message as the result of a hang-

up or lack of an answering machine. Defendant also argued that a class based on only two days

is inappropriate as that has not been sought by Plaintiffs. The Court finds, however, that this

further lends support to the numerosity requirement as it demonstrates that potentially 84 other

accounts received the same message just within a two-day time period.

### b. Commonality and Typicality

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members

of the class. However, it "does not require that all of the questions of law or fact raised by the

case be common to all the plaintiffs." Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D.

Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that

"[d]efendants have engaged in a standardized course of conduct that affects all class members."

In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004); Agan v. Katzman & Korr,

11

P.A., 222 F.R.D. 692, 697 (S.D. Fla. 2004); In re Amerifirst Sec. Litig., 139 F.R.D. 423, 428 (S.D. Fla. 1991).  However, "a class action must involve issues that are susceptible to class-wide proof."  Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004), overruled in part on other grounds by, Ash v. Tyson Foods, Inc., (quoting Murray v. Auslander, 244 F3d 807, 811 (11th Cir. 2001)).

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class.  Piazza v. Ebsco Indus. Co., 273 F.3d 1341, 1346 (11th Cir. 2001); Prado-Steiman,  221 F.3d at 1269.  The purpose of requiring typicality is to ensure the advancement of the class members' interests through the advancement of the plaintiff's own interests.  In re Terazosin, 220 F.R.D. at 687.  Therefore, a class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Murray, 244 F.3d at 811 (citing Prado-Steiman, 221 F.3d at 1279).  The named plaintiff's claims, however, need not be identical to class members as long as the claims arise out of the same conduct and are grounded on the same legal theory.  See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984); see also CV Reit, Inc. v. Levy, 144 F.R.D. 690, 696 (S.D. Fla. 1992).  "The test for typicality, like commonality, is not demanding."  In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996).  To defeat typicality, the factual variation of a class representative "must be clear and must be such that interests of the class are placed in significant jeopardy."  In re Terazosin, 220

F.R.D. at 686 (internal citations omitted).

Defendant's arguments as to commonality and typicality turn on whether a factually intensive inquiry would be required. Defendant argues that each individual's experience with the voice messages would require inquiries into every circumstance, thus precluding the appropriateness of a class action. According to Defendant, it would have to be determined whether each class member was aware or not that Defendant was a debt collector. Defendant's arguments against commonality fail. As noted above, the Act requires disclosure of the debt collector's identity, the purpose of the call, and even in subsequent communications, the Act requires that the debt collector must disclose itself as such. 15 U.S.C. § 1692e(11). Therefore, the issue of whether class members received phone messages that lacked information required by the FDCPA is common to the class members and Plaintiff's claims are typical.

### c. Adequacy

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class. In re Ins. Mgmt. Solutions Group, Inc., 206 F.R.D. 514, 516 (M.D. Fla. 2002). In addition, this may include an examination of the chosen class counsel, especially if there is a potential conflict of interest. London, 340 F.3d at 1253 (discussing cases in which class certification properly denied in instances such as a named plaintiff's brother was class counsel and named plaintiff was employee of class counsel).

Defendant argues that Plaintiff is not typical and thus could not adequately represent the

13

class.  Its arguments again turn on the individualized factual inquiries that would be necessary as

to the particular circumstances of each class member.  As discussed above, the Court does not

find these arguments apply and Plaintiff is an adequate representative.  In addition, Defendant

has not contested that Plaintiff's counsel have experience in such cases and are adequate

representation.

### 3. Rule 23(b)(3)

In addition to meeting the four requirements of Rule 23(a), parties seeking class

certification must prove that the action is maintainable under one of the three subsections of Rule

23(b).  Amchem Prods., 521 U.S. at 614.  Even having satisfied the Rule 23(a) requirements, a

"quest for class certification would nonetheless fail absent satisfaction of one prong of Rule

23(b)."  Labauve, 231 F.R.D. at 671.  Here, Plaintiff seeks certification pursuant to Rule

23(b)(3).  Rule 23(b)(3) requires that (1) "questions of law or fact common to class members

predominate over any questions affecting only individual members," and (2) "that a class action

is superior to other available methods for fairly and efficiently adjudication the controversy."

Fed. R. Civ. P. 23(b)(3).

#### a. Predominance

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but

only that some questions are common and that they predominate over the individual questions."

Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004).  Though similar to the commonality

issue, the predominance requirement is "far more demanding."  Cooper, 390 F.3d at 722; see

also, Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997).  The court's

inquiry is typically focused on "whether there are common liability issues which may be resolved

14

efficiently on a class-wide basis." Brown v. SCI Funeral Servs. of Fla., 212 F.R.D. 602, 606 (S.D. Fla. 2003). Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof. Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989). To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action." Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir. 2000).

Again, Defendant argues that the issues are not subject to generalized proof as its conduct is not necessarily standardized. It argues that the messages allegedly received by Plaintiff were not in conformance with its policies, that it constantly is changing messages, and that it uses different versions of messages at any given time. Therefore, an analysis of each individual message would be required, thus demonstrating that common issues do not predominate. However, other than its own statements[2], Defendant has not offered evidence as to its typical policies. Seidat v. Allied Interstate, Inc., 2003 WL 21468625, *4 (N.D. Ill. 2003) (rejecting argument that named plaintiff's debt collection letter was aberration from normal policy and certifying class).

In fact, in the deposition of Mr. Labaki it was indicated that policies often were not written. For example, Mr. Labaki indicated that he orally instructs the managers and directors as to requirements for the content of the messages. (DE-45, p. 28-29, lines 24-25; 1-4). Mr. Labaki is the person in charge of reviewing the content of the messages and approving them–though he

---

[2]For example, Mr. Labaki admitted that if, in October 2007, he had been provided the text of the messages left for Plaintiff, he would not have approved them as it did not contain a statement that the call was from a debt collector. (DE-45-2, p. 59, lines 3-9).

does not believe that this is a part of Defendant's written policy and there are no written records of the authorization.  (DE-45, p. 44, lines 1-16).  In addition, messages that might have been recorded in the mid-1990s could have still been in use in October 2007–though standards for complying with the FDCPA may have changed.  (DE-45, p. 47, lines 10-24).  Mr. Labaki also testified that not every message necessarily contained the name "National Action Financial Services"–thus, Defendant's arguments above as to a consumer being able to identify it as a debt collector by the name alone fail for this reason as well as the reasons previously discussed.  (DE-45-2, p. 50, lines 8-20; p. 57 lines 6-10).  Apparently, before September 2006, there were no written standards in place and messages that were recorded prior to that time could still have been in use up until 2008.  (DE-45-2, p. 63; 70-71; 116).  It was not until 2008 (while this suit was pending) that Defendant destroyed all messages that had been recorded prior to August of 2007.  (DE-45-2, p. 60, lines 2-10).  Thus, at the time the messages at issue were left, there was no policy in place to review the existing messages to determine if they were in compliance with new policies requiring the disclosure that Defendant was a debt collector.  (DE-45-2, p. 60, lines 13-15; 19-22; p. 62, lines 11-21).

Notably, "[t]he FDCPA establishes a strict liability standard; a consumer need not show intentional violation of the Act by a debt collector to be entitled to damages." Castro v. A.R.S. Nat'l Servs., Inc., 2000 WL 264310, *2 (S.D.N.Y. Mar. 8, 2000) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)).  A single violation of the Act is sufficient to subject a debt collector to liability under the Act.  Id.[3]  Thus, Defendant's arguments as to the message not

---

[3]The Court does note that the FDCPA does provide a debt collector with an affirmative defense known as the "bona fide error defense." See Acheampongtieku v. Allied Interstate, Inc., 2005 WL 2036153, *6 (S.D.N.Y. Aug. 24, 2005). To prevail on this defense, the debt collector

being intentional and having been issued in error is not dispositive.  Therefore, at this time the

Court is not persuaded by Defendant's arguments that the message left for Plaintiff was a mere

aberration and finds that based on the lack of clear policies it is likely that the same or similar

messages were left with other individuals.  Thus, common issues predominate.

### b. Superiority

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must

consider the following:

> (A) the interest of members of the class in individually controlling the
> prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy
> already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of
> claims in the particular forum; and
> (D) the difficulties likely to be encountered in the management of a class
> action.

Fed. R. Civ. P. 23(b)(3); see also, De Leon-Granados v. Eller & Sons Trees, Inc., 497 F.3d 1214,

1220 (11th Cir. 2007).

Defendant argues that for the reasons it has presented as to the individualized issues, this

demonstrates that a class action is not the superior method.  In contrast, Plaintiff has argued that a

class action is the superior method for adjudication of these claims because it would be the most

efficient and consistent method.  She further argues that the amount of statutory damages per

claim is relatively small, thus also making a class action the superior method.

The Court finds that the arguments that the Plaintiff has put forth sufficiently establish

---

must establish that the FDCPA violation was unintentional and resulted from a bona fide error
notwithstanding procedures reasonably adapted to avoid error.  See 15 U.S.C. § 1692k(c).  Foti,
424 F. Supp. 2d at 661; Berg v. Merchants Ass'n Collection Div., Inc., 2008 WL 4936432, *8
(S.D.Fla. Oct. 31, 2008).  However, this issue is not before the Court at this time.

that a class action would be the superior method of adjudicating these claims. The potentially large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be the superior method of adjudicating the FDCPA claim.

### 4. Rule 23(b)(2)

Plaintiff seeks to bring a "hybrid" class action, for both monetary damages and injunctive relief. "A hybrid Rule 23(b)(2) class action is one in which class members seek individual monetary relief . . . in addition to class-wide injunctive or declaratory relief." Cox, 784 F.2d at 1554. A hybrid or Rule 23(b)(2) class action is not appropriate where the "'appropriate relief relates exclusively or predominantly to monetary damages.'" Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983) (quoting Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966 Amendment)). If the declaratory relief is merely incidental to the monetary damages, then a Rule 23(b)(2) action is inappropriate, as is a hybrid class action. Agan, 222 F.R.D. at 70102; Swanson v. Mid Am. Inc., 186 F.R.D. 665, 668-69 (M.D. Fla. 1999). As this Court has previously found, the FDCPA "specifically provide[s] for money damages as the appropriate relief," but does not specifically provide for injunctive relief. Hicks v. Client Servs., Inc., 2008 WL 5479111, *10 (S.D. Fla. Dec. 11, 2008); Agan. 222 F.R.D. at 702; see also, 15 U.S.C. §§1692k(a)(2)(B), 1692k(a)(3). Therefore, the appropriate relief for an FDCPA action is monetary damages, and a Rule 23(b)(2) action and hybrid class action would be improper. Hicks, 2008 WL 5479111 at *10; Agan, 222 F.R.D. at 702; see also, Anderson v. Capital One Bank, 224 F.R.D. 444, 448 (W.D. Wis. 2004).

**C.  The Florida Consumer Collections Practices Class**

Plaintiff also proposes a class under the FCCPA defined as:

(i) all Florida residents to whom Defendant left a telephone message
(ii) in which Defendant failed to state that the call was from a debt collector and/or that the purpose of the call was to collect a debt
(iii) incurred for personal, family, or household purposes
(iv) during the two year period prior to the filing of the Complaint through the date of class certification.

To establish a violation under the Florida Consumer Collections Practices Act, Florida Statute Section 559.72(9), it must be shown that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist.  See Fla. Stat. § 559.72(9). Plaintiff argues that leaving a telephone message without disclosing that the call was from a debt collector violates this right.  Defendant contends that the class definition does not support the legal theory upon which it is premised.  Furthermore, it would require inquiry into the individual facts–to determine whether there was a non-existent right (i.e. a debt that was not actually due) and whether it was done knowingly.

The Court finds that though Plaintiff may have received the call in error, as it was allegedly intended for "J. Drossin" and thus a legal right that did not exist was asserted, this would require individualized inquiries into whether in each case a non-existent right (a debt) was asserted though Defendant knew the right did not exist.  Other than this, Plaintiff has provided no explanation for how the theory would otherwise apply to Defendant's alleged actions.  Thus, the commonality requirement is not met and the Court does not find it necessary to address any of the other class requirements.  A class premised on the FCCPA fails.

### III.  **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Class Certification is **GRANTED IN PART AND DENIED IN PART**.  The FDCPA Class is hereby **CERTIFIED** while the FCCPA class is denied.

2.  The Court hereby certifies a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of:

> (i) all Florida residents for whom Defendant left a telephone message
> (ii) in which Defendant failed to state that the call was from a debt
> collector and/or that the purpose of the call was to collect a debt
> (iii) incurred for personal, family, or household purposes
> (iv) during the one-year period prior to the filing of the Complaint
> (December 21, 2007) through the date of class certification.

3.  Wally Drossin is hereby certified as Class representative.

4.  Donald A. Yarbrough, Esq. and O. Randolph Bragg, Esq. are hereby certified as Class Counsel.

5.  Plaintiff shall file a proposed notice to class members on or before February 17, 2009.

6.  Within ten (10) business days of the Plaintiff's filing the proposed notice to class members, Defendant shall file any objections to it.

7.  The parties shall, on or before February 20, 2009 confer upon and submit a proposed schedule for discovery deadline related to class issues, notification of class members, trial, and any other pertinent dates the parties propose to schedule.  The Calendar Call scheduled for Friday, February 20, 2009 is hereby **CANCELLED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this

2nd day of February, 2009.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Magistrate Rosenbaum
Counsel of Record