UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61873-CIV-DIMITROULEAS

WALLY E. DROSSIN,
on behalf of herself and
all others similarly situated,

       Plaintiff,

vs.

NATIONAL ACTION
FINANCIAL SERVICES, INC.,

       Defendant.

_____/

## ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment and

Memorandum in Support [DE-47; DE-48] and Plaintiff's Motion for Summary Judgment and

Memorandum in Support [DE-81; DE-82].  The Court has carefully considered the Motions,

Defendant's Statement of Material Facts [DE-49], Plaintiff's Statement of Material Facts [DE-

80], Plaintiff's Response [DE-79], Defendant's Response/Reply [DE-87], Defendant's Response

to Plaintiff's Statement of Material Facts [DE-88], Plaintiff's Reply [DE-94], Plaintiff's

Supplement [DE-116], along with the depositions and exhibits filed in support, and is otherwise

fully advised in the premises.

## I.  BACKGROUND

Plaintiff Wally E. Drossin filed this action on December 21, 2007, on behalf of herself

and all others similarly situated.  She alleges that Defendant National Action Financial Services,

Inc. ("NAFS"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

("FDCPA"), and the Florida Consumer Collections Practices Act, Fla. Stat. §§ 559.55, *et seq.*

("FCCPA")*,* through its communications.  Specifically, Plaintiff alleges, in the Amended

Complaint, that in telephone messages she received on October 15 and 16, 2007, the Defendant

failed to identify itself and failed to indicate the purpose of the messages. Plaintiff claims

violations of 15 U.S.C. §1692d(6) and 15 U.S.C. §1692e(11), as well as Florida Statute §

559.72(9).  She seeks statutory damages, declaratory relief, injunctive relief, and attorney's fees.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

On February 2, 2009, the Court certified a FDCPA class [DE-95] pursuant to Fed. R. Civ.

P. 23(b)(3) consisting of:

> (i) all Florida residents for whom Defendant left a telephone message
>
> (ii) in which Defendant failed to state that the call was from a debt collector and/or that the purpose of the call was to collect a debt
>
> (iii) incurred for personal, family, or household purposes
>
> (iv) during the one-year period prior to the filing of the Complaint (December 21, 2007) through the date of class certification.

The undisputed facts are as follows:

Plaintiff Wally E. Drossin is an individual who resides in Broward County, Florida.

Defendant National Action Financial Services, Inc. is a corporation with its principal place of

business in New York.  It regularly uses the mails and telephone in a business, the principal

purpose of which is the collection of debts.  It regularly collects or attempts to collect debts for

other parties. Its net worth is $21,565,023.00.

2

The pre-recorded messages received by Plaintiff on October 15 and 16, 2007 stated as follows:

> I am calling with the offices of National Action Financial Services.  This message is being left in accordance with both Federal and State regulations.  Unfortunately, due to the sensitive nature of this call, Federal laws prohibit the disclosure of any additional information at this time. If you intend to protect your rights as a consumer you will contact me immediately at 1-800-443-2918.  That is 1-800-443-2918.[1]

## II. DISCUSSION

Plaintiff and Defendant have both moved for summary judgment.  Plaintiff argues that summary judgment is proper on the basis that Defendant violated the FDCPA and the FCCPA by failing to disclose in its telephone messages that the call was from a debt collector.  Plaintiff seeks a declaratory judgment and statutory damages in the amount of $1,000.00 for her as the named plaintiff and $215,650.00 (1% of NAFS' net worth) for the FDCPA class.  She also seeks $1,000.00 for herself and $215,650.00 for the FCCPA class, along with a permanent injunction barring NAFS from leaving telephone messages.[2]

Defendant filed a Motion for Summary Judgment, arguing that the Section 1692d(6) claim fails, as does the Section 1692e(11) claim.  Defendant argues that Plaintiff is not a consumer and that the messages adequately disclosed it was a debt collector.  Defendant also

---

[1]The transcript of the messages also indicated that the caller's name was "Mr. Marcio." The remainder of those messages was the same as quoted above.

[2]The Court notes that the parties filed the Motions for Summary Judgment at the same time as the briefing for the class certification.  Therefore, some of the issues, as will be addressed within the Order, overlapped and were mooted by the Class Certification Order.  Defendant had requested that the Summary Judgment issues not be determined until after the class notices had gone out and the notice period had expired, so as to bind any members of the class to the findings.  The class notice period expired on July 20, 2009.

argues that the FCCPA claim is not supported by any evidence.  Moreover, even if any of the claims were valid, it has a *bona fide* error defense.  It had policies in place to reasonably avoid violations and any violations were merely due to errors.  Finally, Defendant  argues that declaratory relief is not available and the injunctive relief sought under the FCCPA is moot.

## A.  Applicable Law

Congress established the FDCPA to "eliminate abusive debt collection practices." 15 U.S.C. § 1692.  The FDCPA restricts communications from debt collectors to consumers in various ways.  See e.g., 15 U.S.C. § 1692c (restricting, among other things, the time or place when a debt collector may contact a consumer); 15 U.S.C. § 1692d (prohibiting harassing or abusive conduct in connection with the collection of a debt).  Although debt collectors are to refrain from mentioning the debt when communicating with third parties, they must provide a warning that is sometimes referred to as the "mini-Miranda."  See e.g., Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 359-60 (D.N.J. 2006). This warning requires that debt callers give "meaningful disclosure of the caller's identity" when placing telephone calls, except when communicating with third parties. 15 U.S.C. §1692d(6).   It is also required that in an initial oral communication, a debt collector must indicate that it is "attempting to collect a debt and that any information obtained will be used for that purpose," and that in subsequent communications, the debt collector must identify itself as a debt collector.  15 U.S.C. §1692e(11).

Notably, "[t]he FDCPA establishes a strict liability standard; a consumer need not show [an] intentional violation of the Act by a debt collector to be entitled to damages." Castro v.

A.R.S. Nat'l Servs., Inc., 2000 WL 264310, *2 (S.D.N.Y. Mar. 8, 2000) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)).  A single violation of the Act is sufficient to subject a debt collector to liability under the Act.  Id.  When a court evaluates whether language is deceptive under the FDCPA, it applies an objective standard to the language's tendency "'to mislead the least sophisticated'" consumer, in order to give effect to the FDCPA's purpose of protecting consumers.  Jeter v. Credit Bureau, 760 F.2d 1168, 1175 (11th Cir. 1985) (quoting Wright v. Credit Bureau of Ga., Inc., 548 F. Supp. 591, 599 (N.D. Ga. 1982)).  Courts may assume, however, that the least sophisticated consumer will "possess a rudimentary amount of information about the world" and will not make "unreasonable misinterpretations."  Rivera v. Amalgamated Debt Collection Servs., 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006) (quotations omitted).

For its part, the Florida Consumer Collections Practices Act, Section 559.72(9) prohibits persons, in collecting consumer debts, from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate or assert[ing] the existence of some other legal right when such person knows that the right does not exist."  Fla. Stat. § 559.72(9).

**B.  Standard of Review**

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Consideration of a motion for summary judgment does not lessen the burden on the non-moving party; the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proven.  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).  According to the plain language of Rule 56(e), the nonmoving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 587.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the

nonmoving party "is merely colorable, or is not significantly probative, summary judgment may

be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

When considering cross-motions for summary judgment a court need not enter a

judgment for either party.  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

Rather, where multiple parties move for summary judgment, a court "'must evaluate each party's

motion on its own merits, taking care in each instance to draw all reasonable inferences against

the party whose motion is under consideration.'"  Hotel Employees & Rest. Employees Union,

Local 100 v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002)

(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## C. Preliminary Issues

First, Defendant argues that summary judgment is appropriate on the Section 1692d(6)

claim because the October 2007 messages provided meaningful disclosure of its identity.

According to Defendant, it identified itself by name, National Action Financial Services, which

is a meaningful disclosure.  However, Plaintiff withdrew her claim under 15 U.S.C. 1692d(6) in

her Response to Defendant's Motion. [DE-79, p. 5 n. 1].  Therefore, the Section 1692d(6) claim

is dismissed.

Defendant also argues that Plaintiff is not a consumer and lacks standing to bring this

action as the messages were received as the result of a mistake.  According to Defendant,

Plaintiff had also received calls in November and December of 2007, in which it *did* identify

itself as a debt collection agency.  It argues that those later messages were intended for Plaintiff,

but that the earlier calls at issue here were meant for a different person with the last name

"Drossin." It contends that in October of 2007, it had an account that belonged to an individual

named "J. Drossin." Upon running a skip-trace search to locate potential phone numbers for that

person, Plaintiff's number came up. However, it allegedly was the result of an error that, rather

than a live caller phoning Plaintiff to determine if it was the correct number for J. Drossin, the

auto-dialer called Plaintiff and left the messages at issue here. Defendant argues that since

Section 1692e(11) of the FDCPA only applies to a consumer, Plaintiff does not have standing to

bring this action. As for this issue, the Court already addressed this when ruling on the Class

Certification Motion and found that Plaintiff has standing. [DE-95, p. 2-6].

**D.  Section 1692e(11)**

Defendant argues that dismissal of the claims of the class under Section 1692e(11) is

proper because it is not necessary to use the term "debt collector" in order to adhere to that

provision's requirements. Defendant argues that identification by name alone can be sufficient to

satisfy this provision. Defendant cites to Reed v. Global Acceptance Credit Co., 2008 WL

3330165 (N.D. Cal. Aug. 12, 2008), to show that it could be possible to identify a company as a

debt collector based on the defendant's name. Defendant argues that prior to the time that a

consumer receives a phone call from the auto-dialer, NAFS sends a letter identifying itself as a

debt collector and that the purpose of the letter is to collect a debt. Therefore, identification by

name in the telephone call, combined with the previous letter, is sufficient to satisfy the

disclosure requirement. The only reason this was not the case in terms of the named Plaintiff

was due to the error as addressed. Defendant also argues that the phone call's reference to the

terms "federal and state" regulations, "federal" laws, and "rights as a consumer" were all

sufficient to apprise any member of the class of the purpose of the call. In addition, it left its 800

number, which could further provide context to the purpose of the call.

The Court finds that summary judgment is appropriate in Plaintiff's favor on this issue.

The Court does not find Defendant's argument persuasive that based on prior communications, a

consumer may have recognized its name and known that it was a debt collector.  In Reed, the

court was addressing a motion for summary judgment, which the court denied, finding that there

was a material issue of fact as to whether the defendants had adequately disclosed that it was a

debt collector.  Reed, 2008 WL 3330165 at *3.  The court found that the name "Global

Acceptance Credit Company" could suggest that the caller was a debt collector.  Id. at *4.  The

court noted however, that in another case, a name such as "NCO Financial Systems" did not

convey that the caller was a debt collector.  Id. (citing Foti v. NCO Fin. Sys., 424 F. Supp. 2d

643, 669 (S.D.N.Y. 2006)).

The Reed court noted in its analysis that the Ninth Circuit has previously held that "where

the debtor already knows the identity of the debt collector, follow-up notices from the debt

collector are not communications and do not require compliance with § 1692e(11) as long as they

are not misleading or false." Reed, 2008 WL 3330165 at *3 (citing Pressley v. Capital Credit &

Collection Service, Inc., 760 F.2d 922 (9th Cir. 1985)).  However, it also stated that it conducted

a thorough analysis under the least sophisticated consumer standard.  Id.  Pursuant to this, the

court held that in addition to the company name, the totality of the circumstances and prior

communications between the parties suggest that a consumer would know the nature and identity

of the caller in the voice mail messages.  Id.

This Court is not bound by nor persuaded by the <u>Reed</u> decision.   The provisions of the

FDCPA are clear that in initial or *subsequent* communications, it must be disclosed that the

communication is from a debt collector.  See <u>Foti</u>, 424 F. Supp. 2d at 668*;* <u>Epps v. Etan Indus.,

Inc.</u>*,* 1998 WL 851488, at *8 (N.D. Ill. Dec. 1, 1998) ("a debt collector satisfies subsection 11's

notice requirement as long as it is clear from the subsequent letter that the sender is a debt

collector.").  Here, the phone call did not disclose this.  See e.g., <u>Masciarelli v. Richard J.

Boudreau & Associates, LLC</u>, 529 F. Supp. 2d 183, 185 (D. Mass. 2007) (failure to disclose

identity as a debt collector in violation of the FDCPA); <u>Foti</u> 424 F. Supp. 2d at 669; <u>Leyse v.

Corporate Collection Servs., Inc.</u>, 2006 WL 2708451, *5  (S.D.N.Y. Sept. 18, 2006) (No material

issue of fact existed as to whether pre-recorded messages defied the requirements of Section

1692(11) as defendant did not identify itself as a debt collector and messages did not mention

anything pertaining to debt collection, or for that matter, anything pertaining to finances);

<u>Hosseinzadeh v. M.R.S. Assoc., Inc.</u>*,* 387 F. Supp. 2d 1104, 1116 (C.D. Cal. 2005) (defendant's

messages failed to convey its status as a debt collector, in violation of FDCPA).

Furthermore, this Court has previously ruled that voice mail messages are

communications under the FDCPA,  <u>Berg v. Merchs. Ass'n Collection Div.</u>, 586 F. Supp. 2d

1336, 1341 (S.D. Fla. 2008), and finds no basis to distinguish subsequent messages under this

rule, especially since the statutory provision requires disclosure in subsequent communications.

The Court also notes that the Ninth Circuit case of <u>Pressley v. Capital Credit & Collection Serv.,

Inc.</u>, 760 F.2d 922 (9th Cir. 1985), upon which <u>Reed</u> relied at least in part on, was addressing a

previous version of Section 1692e(11) that required "that any communication 'made to collect a

debt or to obtain information about a consumer' clearly disclose 'that the debt collector is

10

attempting to collect a debt and that any information obtained will be used for that purpose.'" <u>See</u>

<u>Schwarm v. Craighead</u>, 552 F. Supp. 2d 1056, 1082 n. 18 (E.D. Cal. 2008) (discussing the 1996

amendment to Section 1692e(11) that distinguished between initial and subsequent

communications and finding that <u>Pressley</u> was no longer good law); <u>see also e.g.</u>, <u>Tolentino v.</u>

<u>Friedman</u>, 46 F.3d 645, 650 (7th Cir. 1995) (rejecting <u>Pressley</u>'s holding and finding that

disclosure was required in *all* communications).

 Moreover, other than stating the name, there is "no other suggestion or clue that the

correspondence is from a debt collector.  Put another way, this is not a case where the fact that

the communication is from a debt collector would be apparent even to the least sophisticated

consumer."  <u>Foti</u>, 424 F. Supp. 2d at 669 (citing <u>Epps</u>, 1998 WL 851488 at *9 (holding that

where letter indicated "this is an attempt to collect a debt and any information obtained will be

used for that purpose," and that "it is imperative that you immediately forward the past due

balance," the letter would not confuse an unsophisticated consumer about the author's status as a

debt collector); <u>Ross v. Commercial Fin. Servs., Inc.</u>, 31 F. Supp. 2d 1077, 1079-80 (N.D. Ill.

1999) (holding that letter, which disclosed that debt collector was a "different kind of debt

collection company," satisfied § 1692e(11), even though it did not use exact term "debt

collector")).  The name "National Action Financial Services" is more akin to a name like "NCO

Financial Services" than "Global Acceptance Credit Company."  Therefore, in examining the

issue from the perspective of the least sophisticated consumer, the finding of <u>Foti</u> is more

persuasive than the holding of <u>Reed</u> on this basis as well.  Furthermore, the Court does not find

that vague references to federal and state regulations would necessarily alert an unsophisticated

consumer that this pertains to a debt collection—there are a myriad of federal and state

regulations and the phone call made no indication as to the nature of such laws. "Instead, [under

Defendant's reasoning,] a consumer would have to, upon hearing the message, recall that it [may

have, according to Defendant,] previously received mail from a debt collection agency by the

name of [National Action Financial Services]." Foti, 424 F. Supp. 2d at 669. This is not a

reasonable expectation and ignores the statutory language that requires the debt collector to

reveal its identity–it does not require the consumer to recall any previous communications. Id.

Therefore, Defendant is found to have violated the FDCPA and summary judgment shall be

entered in Plaintiff's favor.

**E.  FCCPA Claim**

As for the FCCPA claim, Defendant argues that this fails as well, since the conduct is the

same as what the FDCPA claim is based on. As the Court found in the Order on the Motion for

Class Certification that a class premised on the FCCPA fails, it need not address this issue for the

class. As for Plaintiff alone, and not the class, it may be that a legal right that did not exist was

asserted since Defendant has since admitted that the October messages were issued to the wrong

Drossin. However, no evidence has been presented that Defendant knew that the right did not

exist when it issued the messages. The only evidence presented has been that Defendant later

learned that the October 2007 messages were issued to the named Plaintiff in error. Therefore,

the FCCPA claim of the individual Plaintiff, to the extent that she may still be asserting it, will

be dismissed as the elements have not been satisfied.

**F.  Bona Fide Error Defense**

Defendant also contends that summary judgment is appropriate because it has a valid

defense under the *bona fide* error defense. The FDCPA provides a debt collector with an

affirmative defense known as the "bona fide error defense." See Acheampongtieku v. Allied
Interstate, Inc., 2005 WL 2036153, *6 (S.D.N.Y. Aug. 24, 2005). To prevail on this defense, the
debt collector must establish by a preponderance of the evidence that the FDCPA violation was
unintentional and resulted from a *bona fide* error notwithstanding procedures reasonably adapted
to avoid error.  See 15 U.S.C. § 1692k(c); Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002,
1005-1006 (9th Cir. 2008); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1514 (9th Cir.
1994);  Berg, 2008 WL 4936432 at *8; Foti, 424 F. Supp. 2d at 661.

"Whereas the intent prong of the bona fide error defense is a subjective test, the bona fide
and the procedures prongs are necessarily objective tests." Johnson v. Riddle, 443 F.3d 723, 729
(10th Cir. 2006) (citing Kort v. Diversified Collection Servs. Inc., 394 F.3d 530, 538 (7th Cir.
2005); Rosado v. Taylor, 324 F. Supp. 2d 917, 933 (N.D. Ind. 2004); Caputo v. Prof'l Recovery
Servs., Inc., 261 F. Supp. 2d 1249, 1257-58 (D. Kan. 2003); Shapiro v. Haenn, 222 F. Supp. 2d
29, 43 (D. Me. 2002); Hartman v. Meridian Fin. Servs., Inc., 191 F. Supp. 2d 1031, 1045 (W.D.
Wis. 2002); Edwards v. McCormick, 136 F. Supp. 2d 795, 801 n. 8 (S.D. Ohio 2001)).  In
carrying out the FDCPA's remedial scheme, courts have interpreted this affirmative defense
narrowly. Spencer v. Hendersen-Webb, Inc., 81 F. Supp. 2d 582, 591 (D. Md. 1999) (citing
Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989); Hulshizer v. Global
Credit Services, Inc., 728 F.2d 1037, 1038 (8th Cir. 1984); Baker v. G.C. Services Corp., 677
F.2d 775, 779 (9th Cir. 1982)).  If there is no showing of preventive procedures aimed at
avoiding errors and only a claim of mistake, the defense fails.  Reichert v. Nat'l Credit Sys., Inc.,
531 F.3d 1002, 1006 (9th Cir. 2008) (conclusory declaration stating that defendant maintained
procedures failed to establish a *bona fide* error defense under the FDCPA); Fox, 15 F.3d at 1514.

"[The defense's] purpose is not to shield collectors from liability for systemic errors or abuses."

Martinez v. Albuquerque Collection Servs., Inc., 867 F. Supp. 1495, 1503 (D.N.M. 1994).

      1.  Wrong Number

Defendant first argues that the defense applies as it did not intend to call Plaintiff on October 15 and 16, 2007. As addressed above, it contends that in October of 2007, it had an account that belonged to an individual named "J. Drossin." Upon running a skip-trace search to locate potential phone numbers for that person, Plaintiff's number came up. However, it allegedly was the result of an error that, rather than a live caller phoning Plaintiff to determine if it was the correct number for J. Drossin, the auto-dialer called Plaintiff and left the messages at issue here.

Paul Labaki, Defendant's corporate representative and in-house counsel explained the procedures in place at NAFS. According to his deposition, the procedure was for a number to be placed in the account notes, but not be placed in a field that the auto dialer could access until Defendant could determine if it was the correct number for the account. (Labaki Depo., p. 74, lines 21-25; p. 75, line 1). It does not have a procedure in place to ensure that an employee will not enter a telephone number into the wrong field. (Labaki Depo., p. 75, lines 10-25; p. 76, lines 1-3). NAFS has received complaints about messages being transmitted to the wrong number. Over the past nine years, it is estimated to have received at least perhaps a couple of hundred of complaints through governmental agencies, such as the Better Business Bureau. (Labaki Depo., p. 73, lines 2-25; p. 74, lines 1-8).

The Court finds that though Defendant had procedures in place to ensure that a live

person would contact someone to determine if it was the correct person, it has not pointed to procedures in place to avoid numbers being erroneously entered and called by the auto-dialer. "The debt collector must have in place some ongoing policy that operates to detect, correct and prevent errors." Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 529 (E.D. Pa. 1996); see also, Crawford v. Credit Collection Servs., 898 F. Supp. 699, 703 (D.S.D. 1995) (no testimony as to any procedures in place to avoid errors). Therefore, the *bona fide* error defense fails as to the claim that the named Plaintiff was called in error.

2. Wrong Message Issued

As for the October 2007 messages, Defendant contends that the message was issued in error. Since September 1, 2006, it has had a policy that no voice message be used until it is reviewed and approved by its in-house counsel, Paul Labaki. He monitors state and federal law in order to ensure compliance. However, the October 2007 messages were recorded and issued without Mr. Labaki's approval or authorization. Therefore, even if it is found that the messages violated the FDCPA, it was unintentional and occurred despite the procedures in place.

Defendant also argues that it has a *bona fide* error defense to any alleged violations that took place before September 1, 2006, should the messages have been recorded prior to that date. This was because of a mistake of law. Prior to the decision in Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643 (S.D.N.Y. 2006), the predominating view in the collection industry was that voice messages were not communications within the FDCPA's scope. Therefore, it was believed Section 1692e(11)'s requirements did not apply in light of the prohibition in Section 1692c(b) not to disclose to a third-party. Debt collectors feared that leaving a voice message

explicitly identifying themselves as such would constitute a third-party disclosure if heard by someone other than the debtor.  In light of litigation on this issue, NAFS adopted a policy on September 1, 2006, that required the in-house counsel to review all voice messages.  Therefore, if the October 2007 messages violated the FDCPA it was based on a mistake of law.

As for recording and issuing the messages, Mr. Labaki indicated that he orally instructs the managers and directors as to the requirements for the content of the messages. (Labaki Depo., p. 28, lines 24-25; p. 29, lines 1-4).  Mr. Labaki is the person in charge of reviewing the content of the messages and approving them. (Labaki Depo., p. 44, lines 1-16).  However, messages that might have been recorded in the mid-1990s could have still been in use in October 2007–though standards for complying with the FDCPA may have changed.  (Labaki Depo., p. 47, lines 10-24).  Mr. Labaki also testified that not every message necessarily contained the name "National Action Financial Services."  (Labaki Depo., p. 50, lines 8-20; p. 57, lines 6-10).  (Thus, Defendant's arguments above as to a consumer being able to identify it as a debt collector by the name alone fail for this reason as well as the reasons previously discussed.)  Apparently, before September 2006, there were no written standards in place and messages that were recorded prior to that time could still have been in use up until 2008.  (Labaki Depo., p. 60, lines 2-25 p.61, lines 1-25; p. 62, lines 1-25; p. 63, lines 1-25).  It was not until 2008 (while this suit was pending) that Defendant destroyed all messages that had been recorded prior to August of 2007.  (Labaki Depo., p. 60, lines 2-10).  Thus, at the time the messages at issue were left, there was no policy in place to review the existing and previously approved messages to determine if they were in compliance with new policies requiring the disclosure that Defendant was a debt collector. (Labaki Depo., p. 60, lines 13-22; p. 62, lines 11-21).  NAFS "relied upon the directors and

management team to handle things appropriately according to . . . policy." (Labaki Depo., p. 61,

line 12-13).

Plaintiff argues that there were not reasonable procedures in place, as demonstrated by

Mr. Labaki's testimony.  The Court agrees.  Defendant has failed to demonstrate by a

preponderance of the evidence that it had sufficient procedures in place to prevent messages such

as the October 2007 ones received by Plaintiff from being issued.  Even in Defendant's

Response/Reply, it states that "NAFS did not take steps to erase old messages, [though] it did not

allow those messages to be used . . .." [DE-87, p. 8-9].  It "only admits that the October 15 and

16, 2007 voice message was put into use in violation of [its] policy." [DE-87, p. 9].  Defendant

points to the efforts made by Mr. Labaki to ensure that it complied with the current law.  Though

this may have ensured that newly recorded messages were in compliance with the current law,

there was no indication of procedures in place to ensure that old messages that were not in

compliance were no longer used.  Furthermore, even if there was a procedure in place to ensure

that messages were authorized by Mr. Labaki, there has been no evidence of procedures to

prevent unauthorized messages from being issued in violation of its policy.  As for the mistake in

law argument, this fails to explain why, if the Defendant was aware after September 1, 2006 that

voice messages should disclose its identity, these messages left over a year later did not do so.

According to Defendant, the use of the message was an unintentional error.  However,

there is no showing as to attempts made to avoid such errors.  As mere mistake is not a sufficient

defense, Defendant's arguments fail and the affirmative defense of *bona fide* error is unavailing

here.  See Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 529 (E.D. Pa. 1996)

(*bona fide* error defense failed, and summary judgment awarded to plaintiff, as the fact that

defendant's representative had attended classes to educate himself as to the FDCPA's requirements said nothing about the specific procedures defendant followed to ensure compliance with the FDCPA).

### G.  Declaratory Relief

Defendants argue that declaratory relief is not available under the FDCPA.  Statutory damages are available and therefore if Plaintiff is awarded these, the Court necessarily would have found, and hence declared, that a violation occurred.

The Court found in the Class Certification Order, that a hybrid class was not appropriate–only a class action for monetary damages was proper.  Therefore, Plaintiff's request for declaratory relief will be denied.  In addition, as the Court has found that the FCCPA claim has not been established, it will not address whether declaratory or injunctive relief would be available under that statute.

### H.  Damages

Plaintiff seeks statutory damages and equitable relief upon a finding that NAFS violated the FDCPA.  15 U.S.C. § 1692k(b)(2) provides that in determining damages in a class action, the Court is to consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

Plaintiff attempts to argue the frequency and persistence of the messages, by contending that NAFS has admitted to leaving similar messages for more than 30,139 Florida residents and leaving the same message with at least 84 individuals. It also argues that the noncompliance was

intentional as NAFS knew of the FDCPA's requirements and either disagreed with it or chose to ignore it.  Defendant has put forth that the damages presents a question of fact for a jury. Moreover, Defendant's Interrogatory No. 3 had indicated that it left messages for 30,139 accounts in the State of Florida for the period December 21, 2005 to August 24, 2007–this simply reflects the number of accounts contacted within that time period, not necessarily all those who received the same or similar messages.  As addressed in the Order on Class Certification, on December 31, 2008, Defendant filed a Supplemental Filing in Response to a Court Order on Plaintiff's Motion to Compel. [DE-71].  Defendant indicated that it had conducted a search of its records to determine what, if any, accounts contained a line entry identical to the line entry for Plaintiff's account on the dates of October 15 and 16, 2007–and thus potentially identify accounts that might have received the same messages.  It identified 84 accounts with the same line entries–though Defendant argues that there is still a possibility that these accounts received a different message or never received a message as the result of a hang-up or lack of an answering machine.  Therefore, the number of individuals affected is disputed.

The Court agrees with Defendant that the determination of damages involves factual issues that are not appropriate for summary judgment.  Therefore, the motion will be denied as to this issue.

### III.  CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion for Summary Judgment and Memorandum in Support [DE-47; DE-48] is **DENIED IN PART AND GRANTED IN PART**.

2) Plaintiff's Motion for Summary Judgment and Memorandum in Support [DE-81] is

**GRANTED IN PART AND DENIED IN PART**.

3) Plaintiff's claims premised on 15 U.S.C. §1692d(6) and Florida Statute § 559.72(9) are

dismissed, as are her requests for declaratory and injunctive relief.

4) Judgment is entered in Plaintiff and the class' favor that Defendant violated 15 U.S.C.

§ 1692e(11) in the messages left on October 15 and 16, 2007, and the same or similar messages

in which it failed to disclose it was a debt collector in accordance with the class definition.

5)  A jury trial shall be held as to the issues of damages.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this

6th day of August, 2009.


WILLIAM P. DIMITROULEAS
United States District Judge




Copies furnished to:

Counsel of Record